UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MATT BANKS (#116002)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 13-144-JJB-SCR

**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, June 9, 2014.

                                                       STEPHEN C. RIEDLINGER
                                                       UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MATT BANKS (#116002)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 13-144-JJB-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is the defendants' Motion for Partial Summary Judgment. Record document number 45. The motion is not opposed.

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Legal Programs Director Trish Foster, Dr. Jason Collins[1] and Dr. Randy Lavespere. Plaintiff alleged that his property was lost, his administrative grievances were not processed properly and he was administered the wrong medication and denied adequate medical treatment, all in violation of his constitutional rights.

Defendants moved for summary judgment relying on a statement of undisputed facts, the results of Administrative Remedy Procedures ("ARP") LSP-2013-449 and LSP-2012-1342, and copies of

---

[1] This defendant was identified as Dr. Jason Collion in the complaint.

the plaintiff's medical records.[2]

**I. Factual Allegations**

Plaintiff alleged that unidentified out-camp supervisors lost his property. Plaintiff alleged that Warden Cain is responsible for all actions of his subordinates, including the unidentified out-camp supervisors who lost his property. Plaintiff alleged that Foster did not present and file his administrative grievances in the proper fashion. Finally, the plaintiff alleged that Drs. Collins and Lavespere gave him the wrong medication and did not give him adequate medical assistance while he was in their care.

**II. Applicable Law and Analysis**

**A. Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c). Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need

---

[2] Record document number 10, under seal.

only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

**B. Failure to Exhaust Administrative Remedies**

Defendants argued that the plaintiff failed to exhaust available administrative remedies before filing suit regarding all claims against them.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998), abrogated in part by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v.*

*Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. Id., 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

The Prison Litigation Reform Act ("PLRA") does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217-218, 127 S.Ct. 910, 922-23 (2007). Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 923.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id*.

Plaintiff alleged that he filed ARPs but the prison administration failed to answer them.[3] To verify the failure to exhaust administrative remedies, the Louisiana Department of Public Safety and Corrections was ordered to file a certified copy of any ARP record related to the claims raised in the complaint. In its response, the department filed the ARP records regarding ARP LSP-12-1342 and ARP LSP-2013-449.[4]

The summary judgment evidence showed that the plaintiff filed ARP LSP-2012-1342 on April 29, 2012, it was received in the Warden's office on May 4, 2012 and placed on backlog until it was accepted on June 29, 2012.[5] Plaintiff complained that he was not receiving his medication. The summary judgment evidence showed that the plaintiff received a response at the First Step on July 19, 2012[6] and at the Second Step on September 18, 2012.[7]

The summary judgment evidence showed that the plaintiff filed ARP LSP-2013-449 on February 12, 2013, it was received by the Legal Programs office on February 18, 2013, it was accepted on March 5,

---

[3] Record document number 1, p. 3, § II.C., 1 and 3.

[4] Record document number 7.

[5] Record document number 45-4, pp. 5, 7 and 11.

[6] *Id*. at 15.

[7] *Id*. at 19.

2013.[8] Plaintiff complained that his property was lost or stolen on January 16, 2013, he was denied assistance by inmate counsel substitutes, and he was denied due process because he is mentally impaired and has not been provided the assistance of an advocate counsel.[9] On March 5, 2013, ARP LSP-2013-449 was rejected on grounds that it contained multiple complaints.[10]

The summary judgment evidence showed that the plaintiff failed to exhaust available administrative remedies regarding any claim against defendants Warden Cain and Foster. As noted above, the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. However, a grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.

Plaintiff's claims against Warden Cain and Foster should be dismissed without prejudice for failure to exhaust available administrative remedies pursuant to 42 U.S.C. § 1997e(a), and with prejudice to refiling the complaint in forma pauperis.

Defendants argued that because the claims raised in the complaint against Drs. Collins and Lavespere are different from the claims exhausted in LSP-ARP-2012-1342, the claims against them

---

[8] *Id.* at 5 and 7.

[9] *Id.* at 7.

[10] *Id.* at 11.

should be dismissed for failure to exhaust available administrative remedies.

The record evidence showed that ARP LSP-2012-1342 was one of the two ARPs related to the claims raised in the complaint,[11] and a review of the First Step Response showed that prison officials construed the grievance as complaining about inadequate medical treatment and a denial/modification of medications.[12]

The summary judgment evidence supports a finding that the plaintiff exhausted available administrative remedies regarding his claims that Dr. Collins and Dr. Lavespere administered the wrong medication and denied the plaintiff adequate medical treatment.

To the extent the complaint can be read to allege claims other than the plaintiff's property was lost, his administrative grievances were not processed properly and he was administered the wrong medication and denied adequate medical treatment, the summary judgment evidence showed that the plaintiff's ARPs failed to provide prison administrators with a fair opportunity to address those claims against these defendants.

### C. Qualified Immunity

Defendants Dr. Collins and Dr. Lavespere argued in the alternative that they are entitled to qualified immunity because

---

[11] Record document number 7.

[12] Record document number 45-4, p. 15, First Step Response to ARP LSP-2012-1342.

their conduct did not violate any of the plaintiff's clearly established constitutional or statutory rights of which a reasonable person would have known.

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights he is alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id.*, at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather, when measured by an objective standard, a reasonable officer would

have known that his conduct was illegal. Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

### D. Medical Indifference

Plaintiff alleged that Dr. Collins and Dr. Lavespere gave him the wrong medication and denied him adequate medical treatment.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not give rise to a Section 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

Plaintiff's medical records showed that on January 11, 2012,

9

the plaintiff was examined at the Physician's Clinic of the Robert E. Barrow, Jr. Treatment Center by Dr. Lavespere for a review following laboratory tests.[13] Plaintiff complained of involuntary muscle spasm.[14] Plaintiff was examined and prescribed medication.[15] On January 14, 2012, the plaintiff was transported by ambulance for complaints of muscles spasms and difficulty breathing secondary to a head cold.[16] Plaintiff was evaluated by a physician.[17]

Plaintiff's medical records showed that the plaintiff was seen at the Physician's Clinic on January 30, 2012, for complaints of muscle spasms, cold intolerance, right ankle pain, tremor, eye and teeth pain and vague complaints of respiratory problems.[18] Plaintiff was examined and prescribed ibuprofen and a nasal spray.[19]

Plaintiff's medical records showed that on January 22, 2012, the plaintiff filed a Health Care Request Form but then refused to be assessed unless he was sent to the hospital.[20] The Emergency

---

[13] Record document number 10, p. 21, plaintiff's medical records.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 19.

[17] *Id.* at 20.

[18] *Id.* at 18.

[19] *Id.*

[20] *Id.* at 17.

Medical Technician ("EMT") contacted Dr. Collins who instructed the EMT to make an appointment for the plaintiff on the schedule sheet.[21] Plaintiff's medical records showed that approximately two hours later the plaintiff declared himself a medical emergency and was examined by an EMT.[22] Plaintiff complained of a productive cough and body aches by 12 hours.[23] Physical examination revealed no redness or pustules to throat, no facial edema or sinus congestion.[24] Plaintiff was ordered Chloraseptic® spray and instructed to keep his scheduled appointment.[25]

Plaintiff's medical records showed that on February 9, 2012, the plaintiff was transported by ambulance[26] to the prison infirmary for complaints of headache and dizziness.[27] Plaintiff was examined by a physician and was then returned to quarters.[28]

Plaintiff's medical records showed that on March 6, 2012, the plaintiff was examined by Dr. Lavespere regarding muscle spasms,

---

[21] *Id*.

[22] *Id*. at 16.

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] *Id*. at 13.

[27] *Id*. at 15.

[28] *Id*.

11

hypertension, diabetes mellitus and hyperlipidemia.[29] Plaintiff's medications were modified following examination and evaluation.[30]

Plaintiff's medical records showed that on April 13, 2012, the plaintiff filed a Health Care Request Form complaining that he had asthma.[31] Physical examination showed that the plaintiff was capable of speaking in complete sentences and his lungs were clear and he was not in acute distress.[32]

Plaintiff's medical records showed that the plaintiff filed a Health Care Request Form on June 15, 2012, for complaints of feeling weak.[33] Plaintiff complained that it was his first day in the agricultural fields.[34] Physical examination showed that the plaintiff spoke in complete sentences and did not appear to be in acute distress.[35]

Plaintiff's medical records showed that on June 15, 2012, the plaintiff completed a second Health Care Request Form complaining

---

[29] *Id*. at 12.

[30] *Id*.

[31] *Id*. at 9.

[32] *Id*.

[33] *Id*. at 8.

[34] *Id*.

[35] *Id*.

12

that he was moved and had not received his insulin for two days.[36] Medical personnel contacted the pill room personnel and was advised that the plaintiff's medication was there but he had not been coming to get it.[37]

Plaintiff's medical records showed that on June 26, 2012, the plaintiff filed a Health Care Request Form complaining that he was experiencing leg, arm, hand, foot, head and back pain.[38] During examination the plaintiff complained that his new medications were causing him to experience nausea, gas and irritable bowel.[39] Plaintiff's treating physician discontinued certain medications and prescribed other medications.[40]

Plaintiff's medical records showed that on June 29, 2012, the plaintiff was examined at the infirmary after declaring himself a medical emergency with complaints of a numb right leg.[41] Physical evaluation showed that the plaintiff had decreased range of motion in right leg and leg spasms.[42] Plaintiff was prescribed Aspercreme®, issued a medical duty status for bed rest and was

---

[36] *Id*. at 7.

[37] *Id*.

[38] *Id*. at 6.

[39] *Id*.

[40] *Id*.

[41] *Id*. at 5.

[42] *Id*.

instructed to keep his scheduled appointment with his treating physician.[43]

Plaintiff's medical records showed that on July 11, 2012, the plaintiff underwent a follow-up examination at the Physician's Clinic for complaints of muscle spasms.[44]

Finally, the plaintiff's Medication Administration Record showed that the plaintiff's medications were prescribed and received by the plaintiff.[45]

There is no evidence in the record that Dr. Collins or Dr. Lavespere were deliberately indifferent to the plaintiff's serious medical needs. Nor is there any evidence that the plaintiff was administered the wrong medication or denied medications. Defendants are entitled to summary judgment as a matter of law.

Plaintiff has neither opposed the evidence offered in this matter nor submitted any fact showing that there is an issue for trial. It is clear that a party may not rest upon mere allegations or denials of his pleadings in opposing a motion for summary judgment. *Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986); *Fontenot v. Upjohn Company*, 780 F.2d 1190 (5th Cir. 1986); *John Hancock Mut. Life Ins. v. Johnson*, 736 F.2d 315 (5th Cir. 1984).

---

[43] *Id*.

[44] *Id*. at 1.

[45] *Id.* at 25-26.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that the defendants' Motion for Partial Summary Judgment be granted and this action be dismissed.  It is further recommended that the plaintiff's claims against Burl Cain and Trish Foster be dismissed for failure to state a claim, based on the plaintiff's failure to exhaust available administrative remedies pursuant to 42 U.S.C. § 1997e(a), and with prejudice to refiling the complaint in forma pauperis.[46]

Baton Rouge, Louisiana, June 9, 2014.

*(signature)*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[46] *Underwood v. Wilson*, 151 F.3d at 296.